Bradbury, J.
Tbe plaintiff in error seeks to reverse a judgment of tbe Circuit Court of Seneca county, denying bim tbe specific performance of tbe following written contract for tbe sale of real estate:
“ Tbis agreement, made at Fostoria, Ohio, this 15th day of April, 1887, by and between S. E. Rife, of tbe village of Mount Corey, county of Hancock and state of Ohio, party of the first part, and R. N. Eybarger and Alonzo Emerine, of Fostoria, Ohio, party of tbe second part, witnessetb:
“ That said party of tbe first part hath tbis day agreed to sell unto tbe party of tbe second part, their heirs, executors, administrators or assigns, the following described tract or lot of land, situated in the township of Jackson, county of Seneca and state of Ohio, and is known as being a part of section thirty-one (31), township three (3), north of range thirteen (13), east, commencing in tbe center of tbe Bulkly road, on tbe east and west quarter section line of section thirty-one; thence east on tbe said line fifty-three rods, more or less, to tbe west line of lands heretofore deeded to Aaron Bochey; thence south twenty-eight rods and eighteen links, more or less, to the center of the Eeigh & Stove road; thence south thirty-six and one-half degrees west oq and along the center of said- Eeigh & Stove road to the center of the Bulkly road; thence north along the center of said road eighty-four rods and eighteen links, more or less, to the place of beginning, containing eighteen acres <of land.
*424 “Together with all hereditaments and appurtenances thereunto belonging, but subject to all legal highways.
“And the said party of second part doth hereby agree to pay to the said party of first part, his heirs, executors, administrators, or assigns, for the land aforesaid, the sum of seven thousand dollars ($7,000) being the value of said premises, payable as follows :
“ One thousand dollars cash in hand, the receipt whereof is hereby acknowledged, and twenty-five hundred dollars in thirty days, and thirty-five hundred dollars in one year at six per cent, interest, together with interest thereon from this date at the rate of six per centum per annum, payable annually.
“And the said party of the second part also agrees to pay all taxes and assessments of every description that may be assessed, or levied, upon said land, from and after the date of these presents, except the June tax of 1887.
“ It is expressly agreed by and between the parties to this agreement, if any one of said installments, or the interest accrued thereon, shall not be paid within three days after falling due, then all said installments remaining unpaid shall at once become due and payable at the election of the first party.
“ Now, if the said party of the second part, their heirs, executors, administrators or assigns, shall well and truly pay the said purchase-money, interest, taxes and assessments, named in this agreement, as it becomes due, the said party of the first part, or his heirs, will well and truly make, execute and deliver unto the said party of the second part, or their legal representatives, a good and sufficient deed for the land aforesaid; but on failure of the party of the second part to pay the purchase-money, or any part thereof, interest, taxes and assessments, as above mentioned, then this agreement shall be void as it regards the party of the first part. Said warranty deed tp be made out and left with Andrew Emerine, and he is to deliver said deed to parties of second part upon payment of the twenty-five hundred dollars, and a mortgage and note, secured by mortgage on said premises, of thirty-five hundred dollars, due in one year, at six per *425 cent. — Party of the first part agrees to pay one-half the cost of an abstract on above lands.”
One defense interposed was, that, by mistake, the written contract omitted to embody a stipulation agreed upon by the parties, to the effect that the plaintiff in error should, within thirty days from the date of the contract, furnish and deposit with Andrew Emerine, for the defendants in error, an abstract of the title to the premises sold, showing that the title to the same was without defect or cloud, and that they were free and clear of any incumbrance. The plaintiff in his reply denied the averments constituting this defense, and upon the issue thus joined the circuit court found for the plaintiff. It was. no doubt, competent for defendants to stipulate that the title should be of such character and in such condition as they desired, and if it did not substantially conform to the terms of the contract, they would not be bound to accept a conveyance of the premises, though the title would be marketable in absence of such special stipulations. The finding of the court, however, upon the issue above stated, absolves the plaintiff from any obligation to furnish any other or better title than is imposed by law upon vendors of real estate generally.
The finding of the court was that the plaintiff had a perfect title extending back to the United States, but that the premises were encumbered by “ a mortgage given by said Wm. Rosetter and wife on the 16th day of March, 1866, to one Morris P, Skinner, then living in Eostoria, O., and recorded in the mortgage records of said Seneca county, Ohio, rol. 18, p, 29B, March 19th, 1866, securing to said Morris P. Skinner the promissory notes of the said William Rosetter for the following sums: Two hundred dollars on the 16th day of March, 1867; two hundred and seventy-two 75-100 dollars, March 16th, 1868; two hundred and ninety-nine and 47-100 dollars, March 16th, 1869; and the court do find that as to the said two hundred dollar nóte all claim is barred by the statute of limitations,
“The court also find that said Morris P. Skinner died at Fostoria, Seneca county, Ohio, on the- day of April, 1876, intestate, that Jane M. Skinner was appointed and *426 qualified as his administratrix; that his estate was settled up, and that his administratrix was discharged by the Probate Court of Seneca county, Ohio, on the 25th day of March, 1888; that his children were all of age at his decease; that his estate was largely solvent; that on the 27th day of April, 1887, the said widow and administratrix, Jane M. Skinner, and all the children of the said Morris P. Skinner, executed and delivered to the said plaintiff their quit-claim deed in proper form and with proper acknowledgment, releasing and quitclaiming to the said plaintiff all their interest and estate in said real estate,- and for the purpose as therein expressed of releasing the said mortgage of the said William Rosetter and wife to said Morris P. Skinner, dated March 16, 1866, calling for $771.72, recorded vol. 18, page 298, in the mortgage records of said Seneca county, Ohio, and that the execution-and delivery of such deed to the plaintiff was fully made known to the defendants before the expiration of thirty days from April 15, 1887.”
The only question that arises on the record for our consideration is whether this uncancelled mortgage created an incumbrance of such character that it should defeat the plaintiff’s right to a specific performance of tire contract. The circuit court found, as a fact, that all claim arising out of the first, or two hundred dollar note, was barred by the statute of limitations. The same evidence that supports that finding would require a finding that an action founded directly upon the other two notes was also barred by the statute, for the last one of them to fall due had been due more than eighteen years when the contract was made, and more than nineteen years when the trial was had. More than twenty-one years had elapsed from the due date of the first note to the time of the trial, but the other two notes had then been due only nineteen and twenty years respectively. The shorter period, however, was longer by four years than that required by the statute to bar an action directly founded upon the notes themselves, The circuit court therefore must have held that there was a cause of action arising upon the mortgage, independent of the notes and unaffected by the bar that had attached to the latter, *427 which was only barred by the lapse of twenty-one years, for,, upon no other hypothesis can the finding, that all claim to. the sum represented by the first note was barred by the statute of limitations, be reconciled with the finding that the statute had not attached to that part of the debt which was-represented by the second and third notes. We do not care to discuss at any length the question whether an action may be maintained upon a mortgage to recover a debt, where the-notes representing the debt'are barred by the statute of limitations. Section 4979, Revised Statutes, provides that, “civil actions other than for the recovery of real property,, can only be brought within the following periods, after the' cause of action accrues;” and the longest period within, which other than real actions can be brought, is provided by-section 4980, Revised Statutes, which permits an action “upon a specialty, or an agreement, contract or promise in. writing,” to be brought within fifteen years. The only actions known to our code of civil procedure are "civil actions; ”' this description therefore includes those proceedings that before the adoption of the code were governed by the rules-of equity, as well as those denominated legal; and it would seem to follow that, if the statute is not wholly disregarded,, the only action that can be maintained upon a mortgage after fifteen years from the time the debt secured by it fell due, if one can be maintained at all, is one to recover the mortgaged, property. 'Conceding that such action may be maintained generally, yet as the mortgagee, Morris P. Skinner, was dead, his estate solvent and fully settled, and his administratrix formally discharged by an order of the probate court having jurisdiction of the administration of the estate, no one could have any beneficial interest in any part of his estate, except his widow and heirs at law. These persons executed to the-plaintiff a quit-claim deed of the premises for the express, purpose of releasing the lien of the mortgage thereon. Whether it would have been more formal and regular to-have had the release of the lien made by his personal; representative, or whether, in view of the fact that the only remedy not barred by the statute of limitations, was an action, to recover the mortgaged property itself upon a title which by the death of the mortgagee descended to his heirs at law,. *428 a release by them was equally regular, need not be determined; for, however this may be, a release executed by those having the entire beneficial interest will bind them, if not at law, at least in equity. Therefore any claim or lien that belonged to the estate of the mortgagee was released by the quit-claim deed executed by his widow and heirs at law, all of whom were of full age.
Any claim that the representatives of the mortgagee could assert having been released by the quit-claim deed, no cloud remained on the plaintiff’s title, except what might arise from a possibility that the mortgagee might have assigned the notes, and that they were outstanding in the hands of the assignee. No testimony was introduced from which an ■assignment could be inferred. The contention at the trial does not seem to have embraced this question, but was confined almost entirely to the issue respecting the mistake in reducing the contract to writing.
It is evident, however, that if the notes were assigned, it must have been before the death of Mr. Skinner, the mortgagee, and that occurred more than eleven years before the contract was made, and more than twelve years before the trial, and during that long period the assignee in no way had made known or asserted his claim. In the absence of evidence. tending to show that an assignment or transfer of the notes was in fact made, the circumstances that the mortgagee continued in life for ten years after the mortgage notes were made, that at his death the notes were not found among his papers, and for a period of more than ten years after his death no claim was asserted upon either the mortgage or the notes, makes the inference that the debt was discharged by its payment to the mortgagee in his life-time very strong ; and against this inference no contrary presumption arises from any incident disclosed in the record. The doubt, if any can be said to exist, arises not from any circumstance found by the court or suggested by the evidence, for no such circumstance is disclosed; but, because in the nature of things an assignment or transfer was possible, and the evidence does not exclude that possibility.
The title of the plaintiff was complete and perfect, and this title he:could convey subject to the possibility that the *429 mortgage debt was outstanding. To parties who really-wished to complete the purchase, this would present no impediment that could not be readily overcome. The plaintiff did all in this respect that reasonably could be required of him, when he offered to leave in the hands of the defendants a sum sufficient to pay all that part of the debt which the court did not find to be barred by the statute of limitations, until the incumbrance could be formally removed, thus affording them complete protection against the claim, if ultimately one was found to exist.
An objection to a title should have some merit in order to defeat the claim of the vendor to the specific performance of the contract of sale.
“ Captious objections to the title ought not to prevail, when made by a purchaser who seeks to avoid the performance of his contract.” Walsh v. Barton, 24 Ohio St., on page 40 of Judge McIllvaiNE’s opinion. And in Ludlow v. O'Neil, 29 Ohio St. 183, Judge Welch employs the following language: “It will never do to say that a doubt * * * however honestly entertained by the purchaser, will justify him in refusing to execute his contract. .As I understand the rule in equity, it is only in cases where the court itself is in doubt as to the title, that a specific execution will be refused on the ground that the title is not marketable. ”
If the title is such that it ought to satisfy a man of ordinary prudence, it is sufficient, In the case under consideration the title was perfect, but was. subject to a mere possibility that a claim might be asserted on an old, uncancelled mortgage, against which full indemnity was tendered. Under such circumstances the objection presents all the features of an excuse for the non-performance of a contract no longer desirable. It is said that the vendees bought the land with a view to its sub-division into town lots, and its immediate re-sale, which purpose was made known to the vendor, and that by reason of this incumbrance, they lost a sale at a considerable advance on the price they were to pay. This may be true, but the plaintiff is no more to be affected by the captious objections of possible purchasers of the ven-dees, than by similar objections on the part of the vendees *430 themselves. Whether the sale should be of the entire purchase as a whole, or in parcels upon its sub-division into building lots, a perfect title, free from any reasonable apprehension of danger from this possible lien, could be made to contemplating purchasers.
The case presents an aspect of some hardness, however viewed. The real estate market at Fostoria, at the time the contract was made, and for a short period thereafter, seems to have been highly excited, and the plaintiff had reason to believe that he could sell the premises for as great, or perhaps a greater, price than he was to receive from the defendants, and when the uncancelled mortgage was discovered, of which he had no previous notice, he offered to rescind the contract, which proposition the vendors declined, and an opportunity to sell upon an excited, if not an inflated market, was lost to the plaintiff. The excitement soon began to subside, and within less than four weeks from the time the sale should have been completed, as the court found, .the premises were only of the value of four thousand dollars, a shrinkage of three thousand dollars from the contract price. If specific performance of the contract is refused, there is thrown upon the plaintiff’s hands property of the value of four thousand dollars, which he had sold for seven thousand dollars, and which if defendant had accepted his offer to rescind, he might have sold at even a greater price. On the other hand the defendants by a specific performance of the contract will be compelled to pay seven thousand dollars for the property when it is worth only four thousand dollars.
The contract, however, was fairly made; moreover it was entered into at the solicitation of the defendants, who were at the time speculating in real estate at Fostoria, and presumably more familiar with its values than the plaintiff, who resided in an adjoining county, though just how distant from Fostoria does not appear. The title of the plaintiff was perfect, and full indemnity offered against what in all human probability was an imaginary incumbrance. Therefore the hardship resulting from the halt in completing the sale should be attributed to the excessive particularity of the defendants. We think that upon the facts found by the court, *431 together with such circumstances as appear from the undisputed evidence, the plaintiff is entitled to a specific performance of the contract. The decree in the circuit court, if it had been rendered in fav-or of the plaintiff in error, should have provided for an indemnity against any claim that might be asserted under the Rosetter mortgage; but if no claim has been yet asserted, as any claim founded on the mortgage itself has become barred, the provision for indemnity is no longer necessary.

Decree accordingly.